DANIEL HOIENGS, ALSO KNOWN AS DANIEL HOINS, ON BEHALF OF HIMSELF AND ALL OTHER PERSONS SIMILARLY SITUATED, AND BYRON BUZEK, ON BEHALF OF HIMSELF AND ALL OTHER PERSONS SIMILARLY SITUATED, APPELLANTS, V. COUNTY OF ADAMS ET AL., APPELLEES.

574 N.W. 2d 498

Filed February 27, 1998.   No. S-96-605.

Mary C. Wickenkamp and, on brief, Richard E. Scott and Brian R. Watkins for appellants.

Randall L. Goyette and Christopher M. Ferdico, of Baylor, Evnen, Curtiss, Grimit & Witt, and Vincent Valentino, of Angle, Murphy, Valentino & Campbell, P.C., for appellees County of Adams et al.

Don Stenberg, Attorney General, and Fredrick F. Neid for appellees E. Benjamin Nelson et al.

Steven L. Willborn for amici curiae Nebraska Sheriff's Association and Nebraska Fraternal Order of Police.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

This is the second appearance in this court of this matter which seeks a declaration that under the County Employees Retirement Act, Neb. Rev. Stat. § 23-2301 et seq. (Reissue 1991 & Cum. Supp. 1992), the defendant-appellee counties are required to make employee account contributions not of 150 percent but of 250 percent of the amount deducted from the compensation paid to members of the retirement system. In the first appearance, *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994) (*Hoiengs I*), we held that the then plaintiff-appellant, Daniel Hoiengs, had stated a cause of action on his own behalf and on behalf of a class and that the district court had thus erred in sustaining the counties' demurrers and in dismissing the petition. (As the records show variation in the spelling of this party's surname, we have elected to continue using the spelling shown in *Hoiengs I*.) Byron Buzek was thereafter added as a plaintiff, and a separate action was filed, seeking a declaration that a 1992 amendment to the retirement act is unconstitutional. The district court consolidated the two actions and ultimately entered summary judgment against the plaintiffs in both actions. The plaintiffs thereupon appealed, asserting, in summary, that the district court erred (1) in not applying the law of the case as established in *Hoiengs I*, (2) in its construction of the retirement act, and (3) in failing to hold the 1992 amendment unconstitutional. The record failing to sustain the assignments of error, we affirm.

## II. SCOPE OF REVIEW

Resolution of the cases depends upon the interpretation of statutes, a matter which presents a question of law. *State ex rel.*

*Garvey v. County Bd. of Comm.*, 253 Neb. 694, 573 N.W.2d 747 (1998). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Garvey, supra*; *Johnson v. School Dist. of Millard*, 253 Neb. 634, 573 N.W.2d 116 (1998).

## III. FACTS

The retirement act, which came into being via 1965 Neb. Laws, ch. 94, § 2, p. 403, establishes a retirement system for certain county employees. It has been amended from time to time, and as of June 1, 1991, the relevant sections provided in part:

> Each employee who is a member of the retirement system shall pay to the county or have picked up by the county a sum equal to three and two-tenths percent of his or her compensation for each pay period. The county shall pick up the employee contributions required by this section for all compensation paid on or after January 1, 1985, and the contributions so picked up shall be treated as employer contributions in determining federal tax treatment under the United States Internal Revenue Code, except that the county shall continue to withhold federal income taxes based upon these contributions until the Internal Revenue Service, or the federal courts, rule that, pursuant to section 414(h) of the United States Internal Revenue Code, these contributions shall not be included as gross income of the employee until such time as they are distributed or made available. The county shall pay these employee contributions from the same source of funds which is used in paying earnings to the employee. The county shall pick up these contributions by a compensation deduction either through a reduction in the cash compensation of the employee or a combination of a reduction in compensation and offset against a future compensation increase. Employee contributions picked up shall be treated for all purposes of the County Employees Retirement Act in the same manner and to the extent as employee contributions made prior to the date picked up.

§ 23-2307 (Reissue 1991).

The county clerk shall pay to the primary carrier an amount equal to two hundred fifty percent of the amounts deducted from the compensation of employees in accordance with the provisions of section 23-2307.

§ 23-2308 (Reissue 1991).

A member's share of the fund arising from the compensation deductions made in accordance with section 23-2307 shall be known as his or her employee account. . . . As of January 1 of each such year, a member's employee account shall be equal to one hundred percent of his or her employee account as of the next preceding January 1, increased by any regular interest earned and any amounts deducted from the member's compensation since the next preceding January 1 in accordance with section 23-2307.

§ 23-2309 (Reissue 1991).

(1) A member's share of the fund arising from the county contributions shall be known as his or her employer account. Prior to January 1, 1981, as of any January 1 a member's employer account shall be equal to his or her account as of the next preceding January 1, increased by two hundred percent of any amounts deducted from the member's compensation since the next preceding January 1 in accordance with section 23-2307. As of January 1, 1982, a member's employer account shall be equal to the account as of January 1, 1981, increased by two hundred percent of the amounts deducted from the member's compensation for the first nine months of the year and two hundred fifty percent for the final three months of the year in accordance with section 23-2307. As of January 1, 1983, and each year thereafter, the member's employer account shall be equal to the account as of the next preceding January 1 increased by two hundred fifty percent of the amounts deducted from the member's compensation since the next preceding January 1 in accordance with section 23-2307.

§ 23-2310 (Reissue 1991).

The retirement value for any employee who retires under the provisions of section 23-2315 shall be the sum

of the employee's employee account and employer account as of the retirement date.

§ 23-2316 (Reissue 1991).

Effective July 15, 1992, the Legislature amended §§ 23-2308 and 23-2310. 1992 Neb. Laws, L.B. 1057. The following concluding language was added to § 23-2308: ", which two hundred fifty percent equals the employees' contributions plus the county's contributions of one hundred fifty percent of the employees' contributions." In § 23-2310, the word "two" was in each instance changed to "one."

Hoiengs began his employment with Cass County in 1987 and began participating in the retirement system in January 1988. He terminated his employment on July 11, 1994. Buzek was appointed sheriff of Saline County in December 1979 and has participated in the retirement system since that time. As a general matter, for the relevant time period, the participating counties have contributed to the various employee accounts 150 percent of the contributions made by members of the retirement system.

## IV. ANALYSIS

### 1. LAW OF CASE

In the first assignment of error, the plaintiffs assert that the district court erred in not applying the law of the case as established in *Hoiengs I*. In essence, their argument is that by reversing the judgment and remanding that cause to the district court in *Hoiengs I*, we determined that the retirement act requires a county contribution of 250 percent. Under the law-of-the-case doctrine, the holdings of the appellate court on questions presented to it in reviewing proceedings of the trial court become the law of the case; those holdings conclusively settle, for purposes of that litigation, all matters ruled upon, either expressly or by necessary implication. *Talle v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 823, 572 N.W.2d 790 (1998); *Latenser v. Intercessors of the Lamb, Inc.*, 250 Neb. 789, 553 N.W.2d 458 (1996); *Pendleton v. Pendleton*, 247 Neb. 66, 525 N.W.2d 22 (1994). The law-of-the-case doctrine operates to preclude a reconsideration of substantially similar, if not identical, issues at successive stages of the same suit. *Talle, supra; In re*

*Application of City of Lincoln*, 243 Neb. 458, 500 N.W.2d 183 (1993).

It is true that in *Hoiengs I*, we held that the district court erred in determining that Hoiengs had failed to state a cause of action. However, it must be borne in mind that when reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the pleader's conclusions. *Galyen v. Balka*, 253 Neb. 270, 570 N.W.2d 519 (1997). The questions we addressed and resolved in connection with a demurrer in *Hoiengs I* involved only the propriety of bringing a declaratory judgment action and whether Hoiengs had successfully pled an action on behalf of a class consisting of " 'current and past' " participants in the system. *Hoiengs I*, 245 Neb. at 900, 516 N.W.2d at 240. In holding that Hoiengs had stated a cause of action on behalf of a class, we wrote that

> [t]he case will turn on the interpretation of the statutes governing county contributions. So far as now appears, the effect on Hoiengs and the others will, in that regard, be basically the same, an increase in the amount of contributions to their employer accounts or no change to their accounts.

*Id.* at 903, 516 N.W.2d at 241. As this language clearly indicates, nowhere in the opinion did we interpret the statutes governing the amount of contributions to be made by the counties. As a result, this assignment of error has no merit.

## 2. CONSTRUCTION OF RETIREMENT ACT

In the second assignment of error, the plaintiffs make a variety of arguments which combine to urge that the district court erred in concluding that the counties are required to contribute only 150 percent of the members' contributions to the employee accounts.

The plaintiffs essentially argue that § 23-2310 is clear in stating that "the member's employer account shall be equal to the account as of the next preceding January 1 increased by two hundred fifty percent of the amounts deducted from the member's compensation since the next preceding January 1 . . . ."

On the other hand, the counties contend that § 23-2310 is inconsistent with § 23-2308.

Section 23-2308 declares that "[t]he county clerk shall pay to the primary carrier an amount equal to two hundred fifty percent of the amounts deducted from the compensation of employees . . . ." However, § 23-2309 requires that employee accounts be increased by 100 percent of the compensation deduction, and the pre-1992 version of § 23-2310 stated that the employer account be increased by 250 percent of the compensation deduction. The obvious problem is that the retirement act instructed the county clerk to pay the primary carrier an amount equal to 250 percent of the deduction, but the sum of the contributions contemplated by §§ 23-2309 and 23-2310 together equaled 350 percent of the amount deducted. While the relevant language of §§ 23-2308 and 23-2310 was clear and unambiguous, it was in conflict.

It is true that in accordance with the principle that the last expression of the legislative will is the law, in case of conflicting provisions of the same statute, or in different statutes, the last in point of time or order of arrangement prevails. *Sidney Education Assn. v. School Dist. of Sidney*, 189 Neb. 540, 203 N.W.2d 762 (1973); *Stoller v. State*, 171 Neb. 93, 105 N.W.2d 852 (1960); *Markel v. Glassmeyer*, 137 Neb. 243, 288 N.W. 821 (1939); *Chilen v. Commercial Casualty Ins. Co.*, 135 Neb. 619, 283 N.W. 366 (1939). However, the fundamental rule in construing statutes is that they shall be construed in pari materia and from their language as a whole to determine the intent of the Legislature. All subordinate rules are mere aids in reaching this fundamental determination. *Wounded Shield v. Gunter*, 225 Neb. 327, 405 N.W.2d 9 (1987); *Malone v. Benson*, 219 Neb. 28, 361 N.W.2d 184 (1985). It is the duty of a court, as far as practicable, to give effect to the language of a statute and to reconcile the different provisions of it so that they are consistent, harmonious, and sensible. *Smith v. Smith*, 242 Neb. 812, 497 N.W.2d 44 (1993); *Malone, supra.* Where it is possible to harmonize apparently conflicting statutes, such is to be done. See *Sidney Education Assn., supra.*

As it is not possible to harmonize §§ 23-2308 and 23-2310, we look to the axiom that in order to ascertain the proper mean-

ing of a statute, reference may be had to later as well as earlier legislation upon the same subject. *Wagoner v. Central Platte Nat. Resources Dist.*, 247 Neb. 233, 526 N.W.2d 422 (1995). " 'All existing acts should be considered, and a subsequent statute may often aid in the interpretation of a prior one.' " *Id.* at 241, 526 N.W.2d at 428.

As it existed from 1965 to 1981, the retirement act provided that the member's employer account be equal to the member's account as of the next preceding January 1, increased by an amount equal to any amounts deducted from the member's salary since the next preceding January 1, that is to say, 100 percent. § 23-2310 (Reissue 1970). Section 23-2308 provided that the county clerk pay to the primary carrier an amount equal to 200 percent of the amounts deducted from a member's compensation. § 23-2308 (Reissue 1970). Thus, no contradiction existed at this point.

The problem began with the amendment through 1981 Neb. Laws, L.B. 459, whereby the Legislature increased the amount to be paid by the county clerk under § 23-2308 to an amount equal to 250 percent of the amount deducted. Because L.B. 459 did nothing to change §§ 23-2309 and 23-2310, the sum of the employee and employer accounts still increased by an amount equal to 100 percent of the amount deducted from a member's compensation, that is to say, a total of 200 percent. In an attempt to remedy the inconsistency caused by the adoption of L.B. 459, the Legislature adopted 1983 Neb. Laws, L.B. 313, which amended the relevant portions of § 23-2310 as set forth in part III above.

In enacting L.B. 313, the Legislature attempted to recite what the counties had contributed in the past and changed the contributions to be made by them in the future. Unfortunately, the recitation in L.B. 313 of what the act provided prior to 1981 was wrong. The counties had contributed an amount equal to 100 percent of the amount deducted from a member's compensation, not 200 percent.

Thus, to remedy the problem and the conflict noted earlier, the Legislature enacted 1992 Neb. Laws, L.B. 1057, which made unmistakably clear that the 250 percent refers to the combined total of the members' contributions and the counties' contributions.

In order to hold as the plaintiffs urge, we also would have to conclude that the Legislature's intention vacillated such that in 1965 it meant the counties to contribute an amount equal to the amount deducted from the members' compensation, intended in 1983 that the counties retroactively pay 100 percent more for deductions made prior to 1981, and in 1992 returned to requiring contributions equal to 100 percent of the amounts deducted from the compensation paid to members of the retirement system for this same period. Such a reading of the Legislature's intention would be absurd.

In construing a statute, it is presumed that the Legislature intended a sensible, rather than an absurd, result. *Slagle v. J.P. Theisen & Sons*, 251 Neb. 904, 560 N.W.2d 758 (1997); *In re Interest of Jaycox*, 250 Neb. 697, 551 N.W.2d 9 (1996). Courts will, if possible, try to avoid a construction of a statute which leads to absurd, unjust, or unconscionable results. *Coleman v. Chadron State College*, 237 Neb. 491, 466 N.W.2d 526 (1991). " " " 'In the exposition of statutes, the reason and intention of the lawgiver will control the strict letter of the law when the latter would lead to palpable injustice or absurdity.'. . ." " " *Id.* at 500-01, 466 N.W.2d at 533.

Reading all of the Legislature's enactments in this regard together, including those adopted prior to the 1981 amendment through L.B. 459 and the amendment adopted in 1992 through L.B. 1057, we are led to the conclusion that at no time did the Legislature intend that the counties make contributions of 250 percent of the amounts deducted from the compensation paid to the members of the retirement system, but, rather, that it intended that all the contributions, those of the counties and the members together, total 250 percent of the amounts deducted from the compensation paid the members since the effective date of L.B. 459.

### 3. CONSTITUTIONALITY OF 1992 AMENDMENT

The foregoing determination moots the third assignment of error, which claims that the 1992 amendment unconstitutionally impaired the vested contractual rights of the members of the system to a county contribution of 250 percent of the amounts deducted from their compensation. As L.B. 1057 did not reduce

the amount of contributions required from the counties, there can be no impairment of any vested contractual right.

## V. JUDGMENT

Accordingly, as first noted in part I, the judgment of the district court is affirmed.

AFFIRMED.