341 A.2d 47.

SAFEWAY SYSTEMS, INC. *vs.* JOHN H. NORBERG,
*Tax Administrator.*

JULY 11, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This matter is before us on a petition for a writ of certiorari wherein the plaintiff-petitioner raises the issue of whether or not packing materials and replacement parts for trucks, purchased from out-of-state suppliers, brought into this state and subsequently used in interstate shipments, are subject to the use tax. The tax administrator concluded after an audit of the plaintiff covering a 6-year period that an assessment for use taxes plus interest and penalties amounting to $4,695.64 should be paid. The plaintiff paid that amount under protest. An appeal was taken to the Superior Court pursuant to the Administrative Procedures Act, G. L. 1956 (1969 Re-enactment) ch. 35, tit. 42, seeking a reversal of the tax administrator's decision and a refund of the amount paid.

The trial justice upheld the decision of the tax administrator and plaintiff filed the instant petition for writ of

certiorari which we granted. *Safeway Systems, Inc.* v. *Norberg*, 113 R. I. 901, 317 A.2d 134 (1974).

The parties agree on the basic facts. The plaintiff is a Rhode Island corporation engaged in the transportation and moving of furniture and household goods. Anywhere from 95 to 97 percent of plaintiff's business consists of moving the household goods of Navy personnel stationed in the Newport area to out-of-state locations to which they have been transferred. The other 3 to 5 percent of plaintiff's business consists of moving household goods within the state of Rhode Island. During the 6 years in question, plaintiff purchased cardboard boxes which it used as containers for household goods and packing materials which it used to protect the household goods in shipment. These materials were purchased from vendors outside of the state of Rhode Island. In some instances no sales tax was paid, and in other instances a sales tax less than that imposed in Rhode Island was paid in the state of purchase. During the period in question, it was plaintiff's practice to keep a 30-day supply of these materials on hand in Rhode Island before use. Once these packing materials were used in an interstate shipment they were never returned to Rhode Island or used again. During the period in question, plaintiff also purchased various types of repair parts for its trucks which it kept in inventory and then used as needed to repair its rolling stock.

The trial justice upheld the decision of the tax administrator which concluded that plaintiff was liable for a use tax on the cardboard boxes and packing materials as well as the repair parts on the ground that these items were stored or used in the state of Rhode Island. For the reasons that follow, we affirm.

We shall first consider plaintiff-petitioner's initial contention that the containers and packing materials are exempt from the use tax. General Laws 1956 (1970 Re-

enactment) §44-18-20, as amended, imposes an excise tax on the "storage, use, or other consumption in this state of tangible personal property." The precise question, therefore, is whether the cardboard containers and packing materials were stored or used in Rhode Island within the meaning of the use tax statute. The word "storage" is defined in §44-18-9 as follows:

> " 'Storage' includes any keeping or retention in this state, except for sale in the regular course of business or for subsequent use solely outside this state, of tangible personal property purchased from a retailer."

The key word in that section is "solely." If tangible personal property is kept or retained in this state for a time but is intended for "use solely" outside this state, then it is not subject to the use tax. Section 44-18-10 defines the word "use" as follows:

> " 'Use' includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of that property in the regular course of business."

The thrust of petitioner's argument is that §44-18-11, which further delineates the above-defined terms by way of exclusion, exempts the cardboard cartons and packing material from the use tax. The petitioner maintains that the trial justice erred in adopting a "strained interpretation" of §44-18-11 and that that section, read in conjunction with §44-18-9, renders inescapable the conclusion that petitioner is entitled to an exemption. Section 44-18-11 reads as follows:

> " 'Storage' and 'use' do not include the keeping, retaining, or exercising of any right or power over tangible personal property shipped or brought into this state for the purpose of subsequently transporting the same outside the state *for use thereafter solely* outside the state, or for the purpose of being processed, fabricated, or manufactured into, attached to or incorporated into, other tangible personal property to

be transported outside the state and thereafter used solely outside the state." (Emphasis added.)

The petitioner urges that if the trial justice was correct in reading the word "thereafter" as modifying "brought into this state" rather than modifying the phrase "subsequently transporting the same outside the state," then §44-18-11 is redundant insofar as it duplicates §44-18-9 in defining "storage." The petitioner argues that this "does violence to the elementary canons of grammar and statutory construction."

The petitioner contends that the word "thereafter" as used in §44-18-11, modifies "subsequently transporting the same outside the state." Were petitioner correct in this contention, then any item of tangible personal property brought into Rhode Island would be exempt from the use tax even if used here for virtually its entire useful life but then transported out of the state to be used there for its remaining life. Such a result could not have been intended by the Legislature.

The only reasonable conclusion must be that in §44-18-11 the word "thereafter" modifies "brought into this state." Thus, the exemption applies only to those goods brought into this state that thereafter will be used *solely* outside the state. That is, the exemption sought by petitioner applies only to goods in transit which stop in the state for a short period of time before resuming their journey to points outside the state where they are used. It is clear that under this interpretation petitioner does not qualify for exemption within the statute, since the containers and packing materials not only are stored in this state for approximately 30 days but they are also used in this state before being sent elsewhere. It is obvious that petitioner, in making a shipment, has to bring the containers and packing materials to the home of the Rhode Island serviceman, fill the cartons with household goods,

place the protective materials in the cartons, load the household goods being shipped on a truck and drive that truck to the Rhode Island border. Clearly and simply, the containers and packing materials are not *used solely* outside of Rhode Island. They are used partially within and partially without the state and thus do not qualify as goods retained in Rhode Island for exclusive use outside the state.

The petitioner also relies on the second part of §44-18-11 to gain an exemption. That reliance is misplaced. It is clear that the cardboard containers and packing materials are not being "processed, fabricated, or manufactured into" other tangible property in Rhode Island. It is also clear that those materials are not "incorporated into" other tangible personal property. Finally, said materials are not "attached to" other tangible personal property within the meaning of that statute. The legislative intent is evident. Under the second part of §44-18-11 the General Assembly intended to exclude from the use tax only those goods that were brought into the state for the sole purpose of being worked on and changed, and thereafter used solely outside the state. The words "attached to" when used in that statute mean a relatively permanent fusing of two or more items which produces, in effect, a final product. In this case, the cardboard cartons and packing materials come into contact with the household goods being transported but in no reasonable sense of the words can they be said to be "attached to" the household goods. The Ohio cases cited by petitioner in its memorandum in support of its petition for certiorari are inapposite since the Ohio statute is significantly different from the Rhode Island statute on this point.

The court, therefore, concludes that the containers and packing materials used in petitioner's business were stored or used in the state of Rhode Island within the meaning

of the Rhode Island use tax statute and, therefore, are subject to the Rhode Island use tax.

Only a short discussion is necessary concerning the repair parts. What has been said about the containers and packing materials applies equally to the repair parts. They are stored in Rhode Island and used in this state by their installation into trucks when necessary. Therefore the exemption contained in the first part of §44-18-11 is inapplicable. The second part of §44-18-11 is similarly inapplicable. Although the parts are "attached to or incorporated into" the trucks, those trucks thereafter are not "used solely outside the state." The plaintiff's rolling stock is used both in and out of the state of Rhode Island. Therefore, the automotive repair parts purchased by petitioner outside the state are subject to the Rhode Island use tax just as they would be subject to the sales tax if purchased in the state. It is immaterial that these repair parts are installed in vehicles which transport goods in interstate commerce. *See Texas Co. v. Brown,* 258 U.S. 466, 42 S.Ct. 375, 66 L.Ed. 721 (1922); *Annot.* 129 A.L.R. 222 (1939).

The above holdings are consistent with the principles of the commerce clause of the United States Constitution, art. I, §8. There is no question that if property is in the flow of commerce from out of state into Rhode Island, and, with minor interruption of its journey, continues out of the state, it is not subject to state taxation. If, however, the interstate journey is interrupted for reasons of convenience or business needs of the owner, the interstate character of the journey ceases and taxation by a state is possible. *Southern Pacific Co. v. Gallagher,* 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586 (1939). *See also Annot.* 171 A.L.R. 283 (1947). Such an interruption occurred here.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the papers certified are remanded to the Superior Court.

*Jeremiah C. Lynch,* for petitioner.

*Julius C. Michaelson,* Attorney General, *Perry Shatkin,* Chief Legal Officer (Taxation), for respondent.